10-818-cv
Kent v. Cardone

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 5ᵗʰ day of January, two thousand eleven.

PRESENT: DENNIS JACOBS,
                            *Chief Judge*,
            GUIDO CALABRESI,
            ROBERT D. SACK,
                            *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - -X
KEITH A. KENT,
            *Plaintiff-Counter-Defendant-*
            *Appellee*,

            -v.-                                    10-818-cv

JOSEPH V. CARDONE,
            *Defendant-Appellant*,

GLADYS M. DROUGHT, EDWARD STYMUS,
SHARON LEO,
            *Defendants-Counter-*
            *Claimants*,

COUNTY OF ORLEANS,
            *Defendant*.
- - - - - - - - - - - - - - - - - - - -X

**FOR APPELLANT:**     Jeremy A. Colby (Michael P. McClaren, on the brief), Webster Szanyi LLP, Buffalo, New York.

**FOR APPELLEE:**     Nira T. Kersmich, Sudbury, Massachusetts.

Appeal from a decision and order of the United States District Court for the Western District of New York (Curtin, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **REVERSED**.

Defendant-Appellant Joseph Cardone ("Cardone"), the District Attorney for Orleans County, New York, appeals from a decision and order of the United States District Court for the Western District of New York (Curtin, J.) denying Cardone's motion to dismiss the complaint on the basis of absolute immunity. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Plaintiff-Appellee Keith Kent ("Kent"), a logger from Albion, NY, filed suit in the Supreme Court for the County of Orleans against Gladys M. Drought ("Drought"), her brother Edward Stymus ("Stymus"), her daughter Sharon Leo ("Leo"), Cardone, and the County of Orleans, alleging various causes of action arising out of a January 2006 logging contract between Kent and Drought, by which Kent would pay $11,000 to log designated trees on Drought's property, plus an additional sum to log unspecified other trees. As Kent was logging, Stymus raised a dispute as to the value of the trees. Five days later, Leo filed a complaint against Kent with the New York State Police alleging that Kent took advantage of Drought. Three months later, at the instigation of Drought, Leo, and Stymus, Kent was arrested and charged with grand larceny in the third degree, criminal possession of stolen property, tampering with physical evidence, unlawful removal of protected plants, and trespass.

Kent alleges that, while he was in police custody, Cardone threatened to indict him if he did not pay Drought the money that she sought for the trees--an amount that Kent considered to be unreasonable; that Cardone presented

2

charges to a grand jury when Kent refused to pay; that after his presentation to the grand jury, Cardone followed several of them to a restaurant to continue his argument; and that the single charge in the resulting indictment (tampering with evidence) was eventually dismissed.

"When a district court denies immunity on a Rule 12(b)(6) motion to dismiss, 'we review the district court's denial de novo, accepting as true the material facts alleged in the complaint and drawing all reasonable inferences in plaintiffs' favor.'" Warney v. Monroe County, 587 F.3d 113, 120 (2d Cir. 2009) (quoting Johnson v. Newburgh Enlarged School Dist., 239 F.3d 246, 250 (2d Cir. 2001)). We have jurisdiction to review a denial of absolute immunity under the collateral order doctrine if the denial involves only a question of law. See Nixon v. Fitzgerald, 457 U.S. 731, 742-43 (1982).

Prosecutors are entitled to absolute immunity when they engage in activities "intimately associated with the judicial phase of the criminal process," Imbler v. Pachtman, 424 U.S. 409, 430 (1976), and done "in the course of [their] role as . . . advocate[s] for the State," Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). Whether an action is "prosecutorial" is determined by a "'functional approach,' which looks to 'the nature of the function performed, not the identity of the actor who performed it.'" Id. at 269 (citations omitted) (quoting Burns v. Reed, 500 U.S. 478, 486-87 (1991); Forrester v. White, 484 U.S. 219, 229 (1988)). "In Imbler, the Court concluded that the 'reasons for absolute immunity appl[ied] with full force' to the conduct at issue because it was 'intimately associated with the judicial phase of the criminal process.'" Van de Kamp v. Goldstein, --- U.S. ---, 129 S. Ct. 855, 861 (2009) (alteration in original) (citing Imbler, 424 U.S. at 430). Although the "duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom," Imbler, 424 U.S. at 431 n.33, absolute prosecutorial immunity is afforded "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct," Burns, 500 U.S. at 494.

A prosecutor therefore has absolute immunity from a claim for damages for "initiating a prosecution," Imbler, 424 U.S. at 431; see, e.g., Barr v. Abrams, 810 F.2d 358,

3

362 (2d Cir. 1987) (absolute immunity extends to prevent suit against prosecutors based on their actions in filing criminal information and procuring arrest warrant), as well as for his performance of tasks as an advocate in the conduct of the prosecution, see, e.g., Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994) (holding that a prosecutor was absolutely immune from liability on damages claim that he conspired to present false evidence at criminal trial).

Absolute immunity likewise extends to an agreement to forgo prosecution in exchange for certain types of concessions. In Taylor v. Kavanagh, 640 F.2d 450 (2d Cir. 1981), for example, the plaintiff brought a suit for damages on the ground that in a prior criminal proceeding the prosecutor had misrepresented facts to him, inducing him to plead guilty to certain charges; we ruled that the prosecutor enjoyed absolute immunity because he was plea bargaining, a prosecutorial function. Id. at 453. In Schloss v. Bouse, 876 F.2d 287 (2d Cir. 1989), the prosecutor required plaintiffs, who had been wrongfully arrested, to execute releases in favor of various municipal entities in exchange for his agreement not to prosecute. Id. at 292-93. Emphasizing that "the demand for releases and the threat to prosecute were interdependent," we concluded that the prosecutor must be understood to have made "a prosecutorial decision, albeit a conditional one," and that the demand for the releases was akin to a plea bargain. Id. at 291. Absolute immunity was conferred without regard to the prosecutor's motivation in securing the releases, because negotiation of a plea bargain is an act within a prosecutor's jurisdiction as a judicial officer. Id. at 292. In that case, "we [we]re not confronted with a demand that [wa]s foreign to the prosecutor's office," id., and we expressly rejected any notion that

> the prosecutor may with impunity couple a threat of prosecution with all manner of demands, for example, demands for bribes or sexual favors. A government official does not have absolute immunity for acts that are manifestly or palpably beyond his authority, or performed in the clear absence of all jurisdiction.

Id. at 291 (internal quotation marks and citations omitted). In order to determine whether a prosecutor has lost his shield of absolute immunity by making his prosecutorial decision conditional on the suspect's performing a demanded

4

act, a court must look to "the nature of the conduct that was allegedly intertwined with the prosecutorial decision and deny absolute immunity if the demand was plainly beyond the prosecutor's jurisdiction." Id. at 291-92 (internal citation omitted). If the prosecutor has acted "'without any colorable claim of authority'" to impose the condition in question, his conduct is not protected by absolute immunity. Id. at 291 (quoting Barr, 810 F.2d at 361).

Cardone's demand that Kent make payment to Drought is manifestly indistinguishable from the demand made in Schloss. The district court erroneously analogized Cardone's conduct to solicitation of a bribe; the complaint lacked any allegations to support such an inference. Kent was arrested pursuant to a criminal complaint, and the decision to seek an indictment was within Cardone's prosecutorial discretion. Cardone's demand that Kent pay Drought could arguably be considered a demand that Kent make restitution to Drought in exchange for Cardone's agreement not to prosecute. See Schloss, 876 F.2d at 291.

The district court did not consider Cardone's alleged discussion with grand jurors, but we conclude that he would also be entitled to absolute immunity for such conduct. A prosecutor is absolutely immune with respect to non-investigatory conduct before a grand jury. See Imbler, 424 U.S. at 431 (holding prosecutors absolutely immune for initiating prosecutions and presenting evidence); accord Fitzsimmons, 509 U.S. at 274 n.5 (acknowledging that absolute immunity shields "a prosecutor's decision to bring an indictment, whether he has probable cause or not"); Pinaud v. County of Suffolk, 52 F.3d 1139, 1149 (2d Cir. 1995) (holding district attorneys absolutely immune from claim for malicious prosecution and presentation of false evidence to the grand jury); Hill v. City of New York, 45 F.3d 653, 660-61 (2d Cir. 1995) (holding prosecutors and those working under their direction absolutely immune for malicious prosecution and for conduct before a grand jury); see also Zahrey v. Coffey, 221 F.3d 342, 347 (2d Cir. 2000) (noting parties' agreement that absolute immunity shields prosecutor for presentation of "allegedly false testimony to the grand jury").

The actions Cardone is alleged to have taken are wildy inappropriate and may furnish grounds for a finding of prosecutorial misconduct. See, e.g., ABA Standards for Criminal Justice: Prosecution Function, Standard 3-3.5

5

Relations with Grand Jury ("(b) The prosecutor should not make statements or argument in an effort to influence grand jury action in a manner which would be impermissible at trial before a petit jury; (c) The prosecutor's communications and presentations to the grand jury should be on the record."). Nevertheless, we apply a "functional approach" to determine whether a prosecutor is entitled to absolute immunity; the conduct alleged was done in his prosecutorial role as an advocate, and it cannot be said that the conduct was "without any colorable claim of authority" because the prosecutor was still advocating in favor of indictment. Schloss, 876 F.2d at 291. Accordingly, although the district court might be well advised to assure itself that Cardone's alleged misconduct has been called to the attention of the appropriate authorities, the district court's decision denying Cardone absolute immunity must be reversed.

We have considered Kent's remaining arguments and consider them to be without merit. For the foregoing reasons, the judgment of the district court is **REVERSED.**

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

6